RUSSELL, J.,
for the Court:
¶ 1. Crystal Henley appeals the Harrison County Circuit Court’s grant of summary judgment in favor of Dr. Frank Martin and Biloxi Regional Medical Center (BRMC). She asserts that the circuit court erred in: (1) relying on an affidavit filed three days before the scheduled hearing in granting the summary-judgment motion; (2) granting summary judgment; and (3) holding that the one-year time *418 period for filing an action for assault and battery runs from the date of the incident without regard to the time of the discovery. We find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On November 17, 2006, Dr. Martin performed surgery on Henley at BRMC. Prior to surgery, Henley indicated that she would not accept a blood transfusion due to her religious beliefs, and the nurse made a notation in Henley’s medical record.[1] The consent to treatment and admission form also indicated that Henley had refused to accept blood or blood components for transfusion.
¶ 3. Henley was discharged on November 24, 2006. The discharge summary stated: “Estimated blood loss was 1000 milliliters.... The patient was transfused with 2 units of packed red blood cells.” The discharge summary was prepared by Dr. Martin’s nurse practitioner on December 6, 2006, and was signed by Dr. Martin on December 8, 2006.
¶ 4. On May 14, 2007, Henley requested a copy of her medical records from her November 17, 2006 admission.[2] Henley later testified that she received her medical records in May 2007. These medical records included the discharge summary, which mistakenly stated that she had received a blood transfusion.
¶ 5. On November 9, 2009, Henley wrote Dr. Martin a letter indicating that she needed to know, for legal purposes, whether “the two units of blood were in fact introduced into [her] body.” On November 19, 2009, Henley was notified by Dr. Martin’s office that she did not receive a transfusion.
¶ 6. On February 4, 2011, Henley filed a complaint against BRMC and Dr. Martin for assault, battery, and medical malpractice, alleging that she had received a blood transfusion despite her pre-surgery instructions. Her complaint stated:
The actions complained of ... occurred on November 17, 2006[;] however, [Henley] will show that the cause of action was fraudulently concealed from [her] as such is contemplated by [s]ection 15-1-36(2)(b) of the Mississippi Code [Annotated] until February 15, 2010, and as such, for the purpose of this action[,] the cause of action is considered to have accrued on February 15, 2010[ — ]the date that [Henley] discovered the cause of action.
¶ 7. On August 5, 2011, Dr. Martin executed an affidavit, which read, in part, as follows:
I performed [a procedure] on [Henley] at [BRMC] on November 17, 2006. During the operation, [Henley] lost approximately 1000 cc’s of blood. Two units of red blood cells were ordered and were available for possible infusion while [Henley] was in the ICU, but [Henley] refused the blood transfusion.
[[Image here]]
There is only one document in the ... medical chart [that] indicates that [Henley] received a blood transfusion. The [discharge [s]ummary indicates, among other things, that “the patient was transfused with two units of packed red blood cells.” The [discharge [s]ummary was dictated by ... my nurse practitioner, and I subsequently signed it. The *419 inclusion of such language ... was in error, as can be demonstrated by other documents contained in the hospital chart.
[[Image here]]
Records from [BRMC’s] blood bank confirm that the two ordered units of blood were never transfused.
[[Image here]]
Other records from the hospital chart further confirm that [Henley] did not receive any blood products.
[[Image here]]
I received a letter dated November 9, 2009, from [Henley] ... asking if she actually received any blood products as a result of the surgery. There is a handwritten notation on that letter which indicates that on November 18, 2009, one of my staff members ... called [Henley] ... and left her a message. There is a separate handwritten notation ... which indicates that on November 19, 2009, [a staff member] spoke with [Henley] and informed her that she did not receive a blood transfusion in November 2006.
[[Image here]]
[Henley] did not receive a transfusion of blood products as a result of the November 17, 2006 surgery and subsequent admission to [BRMC].
¶ 8. On August 8, 2011, Dr. Martin filed a motion to dismiss with prejudice due to the expiration of the statute of limitations and a motion for summary judgment. On August 9, 2011, BRMC joined in this motion.
¶ 9. On August 15, 2011, BRMC filed an affidavit executed on August 12, 2011, by Michael Seabet, BRMC’s blood bank supervisor. Scabet’s affidavit documented the procedure for selecting, labeling, releasing, and issuing units of blood from BRMC’s blood bank. He explained that each unit of blood has a specific unit number, which is used to track the location and disposition of each unit of blood in a computerized system called a unit-history report. The unit-history report identifies each time a particular unit of blood is “selected” for a particular patient and tracks whether the unit of blood is subsequently “released” or “issued and transfused.” If a selected unit of blood is not issued and transfused to a patient within three days, the unit of blood is released back into the blood bank’s general stock, and the unit of blood becomes available for use by another patient. The unit-history report also identifies each subsequent patient the particular unit of blood is selected for, when the unit of blood is actually issued and transfused into a patient, and the exact patient who actually receives the unit of blood. Seabet stated that he personally conducted a search of the blood bank database for any units of blood selected for Henley during her hospitalization from November 17, 2006, until her discharge on November 24, 2006. He determined that two units of blood were selected for Henley on November 17, 2006, at 10:08 a.m., and that these same two units were released to the general blood bank on November 21, 2006, at 7:81 a.m. The unit-history report confirmed that these two units of blood were then selected for another patient, and the other patient actually received both units of blood on November 25, 2006, at 8:00 a.m. Therefore, Seabet was able to conclude that Henley did not receive a blood transfusion at BRMC during her hospitalization from November 17, 2006, through November 24, 2006.
¶ 10. On August 18, 2011, a hearing was held on the motion to dismiss and for summary judgment. At this hearing, Henley testified that in December 2006, she had her first follow-up visit at Dr. Martin’s office, and she was told that she did not *420 receive a transfusion. She stated that approximately six months after her follow-up visit, she requested her medical records. Henley testified that she actually received her medical records in May 2007, which included the discharge summary mistakenly indicating she had received a transfusion.
¶ 11. On August 31, 2011, the circuit court granted the motion to dismiss and for summary judgment in favor of the appellees. The circuit court found that the assault and battery claims were time-barred by the one-year statute of limitations; therefore, it granted a Mississippi Rule of Civil Procedure 12(b)(6) motion to dismiss for these claims. The circuit court further determined that Henley’s medical-malpractice claim was time-barred:
The remaining claims made by [Henley] are all claims arising out of her treatment by Dr. Martin at [BRMC].... [Mississippi Code Annotated] [s]ection 15 — 1—36[ (1) ] provides that all such claims must be filed within two (2) years from the date the alleged action, omission[,] or neglect shall or with reasonable diligence might have been first known or discovered. [Henley] had a copy of her complete medical record on May 14, 2007. That record clearly states in the discharge summary that she received two units of blood. Once she obtained the records, she had a duty to use reasonable diligence to review the records to discover whether she had a potential cause of action against these defendants. He[r] complaint was not filed until February 4, 2011, more than three years after she received the records. Whether the date of the surgery or the date she received the record is used to trigger the statute, [Henley’s] cause of action for malpractice is time[-]barred by [section] 15-1-36(1).
Finally, the circuit court determined that, even if Henley’s claims were not time-barred, there was no genuine issue of material fact:
In support of the motion [for summary judgment,] there is an affidavit from Dr. Martin[,] which avers that the discharge summary is in error and that, although blood was ordered, it was never administered to [Henley]. The medical records reflect that the blood was “released” and not transfused into [Henley]. Further supporting Dr. Martin’s position that no blood was administered is the affidavit of [Scabet], the [b]lood [b]ank [supervisor at [BRMC]. According to Scabet’s affidavit, each unit of blood is tracked by its “unit number[,]” and a “unit history” is maintained for each unit of blood. Scabet’s search of the [b]lood [b]ank database identified two (2) units of blood that were selected for Henley on November 17, 2006. The units’ history indicated that the two units were released on November 21, 2006[,] and then indicates that the two (2) units were later selected for a different patient who received both units of blood on November 25, 2006. [Henley] failed to present any sufficient evidence to create a genuine issue of material fact regarding the question of whether she received a blood transfusion in November 2006. [Henley] is unable to establish a prima facie case of assault and battery [or] medical negligence against Dr. Martin or [BRMC].
¶ 12. Henley appealed the circuit court’s order granting the motion to dismiss and for summary judgment.
DISCUSSION
I. Whether the circuit court erred in relying on an affidavit filed three days before the scheduled hearing in granting the motion for summary judgment.
¶ 13. Henley argues that the circuit court erred in considering an affidavit *421 filed three days prior to the hearing on the motion for summary judgment. She argues that Rule 56 requires an affidavit be filed and served at least ten days prior to a scheduled hearing. The ten-day provision in Rule 56(c) states that “[t]he motion shall be served at least ten days before the time fixed for the hearing.” (Emphasis added). Thus, there is no time limit for serving affidavits in Rule 56. Id. This issue is -without merit.
II. Whether the circuit court erred in granting summary judgment.
¶ 14. We review a circuit court’s grant of summary judgment de novo. Perez v. Univ. of Miss. Med. Ctr., 75 So.3d 609, 611 (¶ 10) (Miss.Ct.App.2011). In considering a motion for summary judgment, “[t]he evidence is considered in the light most favorable to the nonmoving party[.]” Id. Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). Under Rule 56(e):
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
¶ 15. Henley argues that the circuit court erred in granting summary judgment, because there was conflicting evidence upon which a jury could have found that a transfusion took place. However, Henley does not rely upon anything other than her bare assertions that she received a blood transfusion as stated in the discharge summary. On the other hand, the appellees presented an affidavit from Dr. Martin stating that Henley did not receive the blood transfusion, and that the notation in the discharge summary was an error. Further, the blood bank supervisor submitted an affidavit explaining that the blood initially “selected” for Henley was actually transfused into another patient. After these affidavits were introduced, Henley failed to respond or set forth specific facts showing there was a genuine issue of material fact. Therefore, summary judgment was properly granted in favor of the appellees. This issue is without merit.
III. Whether the circuit court erred in holding that the one-year limitations period for filing an action for assault and battery runs from the date of the incident without regard to the time of the discovery.
¶ 16. The circuit court dismissed Henley’s claims for assault and battery due to the running of the statute of limitations. We review a trial court’s grant of a motion to dismiss de novo. Campbell v. Davis, 8 So.3d 909, 911 (¶ 13) (Miss.Ct.App.2009).
¶ 17. Henley argues that this Court should extend the time period for the statute of limitations so that the statute of limitations will not begin to run until the assault and battery has been discovered or should have been discovered. Initially, we note that statutes of limitations are a creature of statute. It is the role of the Legislature—not the courts—to establish statutes of limitations. See Fairley v. George Cnty., 871 So.2d 713, 718 (¶ 13) (Miss.2004) (noting that the court’s “role is one of interpreting the law as passed by *422 the Legislature,” and the courts “will interpret the statute as written, ever mindful that the Legislature has the ultimate authority to further modify the statutes if it deems necessary”).
¶ 18. Turning to the relevant statute for assault and battery, Mississippi Code Annotated section 15-1-35 (Rev.2012) states: “All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.” (Emphasis added). “[A] cause of action involving an intentional tort begins to run from the time the individual is injured and not its discovery unless the running of the limitations period is tolled by” fraudulent concealment of the cause of action. Goleman v. Orgler, 771 So.2d 374, 377 (¶ 9) (Miss.Ct.App.2000) (emphasis added).
¶ 19. In this case, Henley’s alleged injury would have occurred on November 17, 2006 — the date of her surgery. Henley did not file her complaint until February 4, 2011, which is well over one year from the date of her surgery. Therefore, her action for assault and battery is time-barred.
¶20. Even assuming for the sake of argument that a discovery rule did apply to Henley’s claim for assault and battery, Henley received the medical records in May 2007, which included the discharge summary indicating (mistakenly) that she received a blood transfusion. Henley did not file her complaint until February 4, 2011 — well over a year from the date she received the medical records. In sum, whether the discovery rule applies or not, her action for assault and battery is time-barred. This issue is without merit.[3]
¶ 21. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. IRVING, P.J., BARNES AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. The notation stated: "[patient] adamant about never[,] under [any] circumstances[,] ... accepting] blood transfusions [due to] religious beliefs.”

. According to Henley, she wanted to know why her surgery took much longer than expected.

. Henley does not appeal the circuit court's dismissal of her medical-malpractice claim, which was dismissed due to the running of the two-year statute of limitations for medical malpractice cases under Mississippi Code Annotated section 15-1-36 (Rev.2012). We note that her medical-malpractice claim was properly dismissed as time-barred. Although there is a discovery rule for medical-malpractice cases, Henley received her medical records in May 2007, and her complaint was not filed until February 4, 2011. Therefore, the circuit court properly dismissed this claim as well.